IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SABINA BURTON,

               Plaintiff,

   v.

BOARD OF REGENTS OF THE UNIVERSITY        OPINION & ORDER
OF WISCONSIN SYSTEM, ELIZABETH
THROOP, DANIEL FAIRCHILD, ELIZABETH        17-cv-36-jdp
FRIEDERS, QIONG LI, MARY ROSE WILLIAMS,
and
STACI STROBL,

               Defendants.

---

Plaintiff Sabina Burton is a tenured associate professor of criminal justice at the University of Wisconsin-Platteville (UWP). This is the second lawsuit Burton has brought against defendant Board of Regents of the University of Wisconsin System (the entity responsible for UWP) and UWP employees concerning alleged discrimination and retaliation stemming from Burton's assistance of a student who felt she was sexually harassed by another professor. Defendants move to dismiss each of Burton's claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. 15. The court will grant defendants' motion on all but one of Burton's claims.

ALLEGATIONS OF FACT

The court draws the following facts from Burton's amended complaint, Dkt. 10, and accepts them as true for the purpose of deciding defendants' motion. *Parungao v. Comm. Health*

*Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). The court also draws facts from court records in

Burton's first lawsuit. *Id.*

On April 14, 2014, Burton filed suit against the Board of Regents and three UWP

employees: Thomas Caywood, Elizabeth Throop, and Michael Dalecki. *See Burton v. Bd. of*

*Regents of the Univ. of Wis. Sys. (Burton I)*, No. 14-cv-274 (W.D. Wis. filed Apr. 14, 2014). She

alleged that she faced discrimination and retaliation from UWP colleagues and administrators

after she advocated for a student who complained of sexual assault at the hands of another

UWP professor—both because of her support for the student and because of the administrative

charges of discrimination and the lawsuit that she eventually filed.

On November 12, 2014, Burton filed a grievance with the UWP Complaints and

Grievances Commission regarding a letter of direction placed in Burton's personnel file by

defendant Elizabeth Throop, the dean of the UWP College of Liberal Arts and Education.[1]

Defendants Elizabeth Frieders, Qiong Li, Mary Rose Williams, and Staci Strobl were members

of the Commission at the time; defendant Daniel Fairchild was the chairperson. The UWP

policy on grievances required a hearing within 20 working days of filing a grievance with the

chairperson, but no hearing was scheduled on Burton's grievance. On September 11, 2015,

Burton amended her complaint in *Burton I* to include claims concerning the letter of direction

and subsequent grievance. On October 19, 2015, Burton withdrew her grievance against

Throop.

---

[1] As the court explained in *Burton I*, "The letter identified seven events that Throop described as showing 'a consistent pattern of unprofessional and inappropriate behavior' [and] warned Burton that failure to follow [five specific] directions would result in disciplinary action." 171 F. Supp. 3d 830, 837 (W.D. Wis. 2016).

Meanwhile, Strobl became chair of the criminal justice department. She immediately began to scrutinize Burton more than other criminal justice faculty and staff. For example, she sent "a copy of each email" from Burton to Throop and other UWP administrators. Dkt. 10, ¶ 162. At one point, Burton complained to Strobl that other faculty and staff, including Deborah Rice and Michael Dalecki (the former interim chair of the department), were harassing her, but Strobl did nothing.

In March 2016, the court granted summary judgment in the defendants' favor on all of Burton's claims. *See Burton I*, 171 F. Supp. 3d 830 (W.D. Wis. 2016). The court did so because Burton conceded that she could not succeed on many of her claims and adduced no evidence that she suffered materially adverse actions as a result of filing charges of discrimination and bringing the lawsuit. *Id.* at 833-34. The court denied Burton's pro se motion for reconsideration. *See Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, No. 14-cv-274, 2016 WL 35112287 (W.D. Wis. June 22, 2016). Burton appealed; the Seventh Circuit affirmed. *See Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690 (7th Cir. 2017).

On April 26, 2016, Burton filed a grievance against Rice because Rice falsely stated that Burton had a mental illness. She also renewed her grievance against Throop and requested a hearing. The grievance policy did not explicitly prohibit or allow renewal of grievances. She explained that she wanted the letter of direction removed from her personnel file and that she "possessed testimony and documents from [*Burton I*] that showed that the alleged incidents in the [letter of direction] involved protected activity . . . and/or were factually incorrect." Dkt. 10, ¶ 132. Throop learned of Burton's request and talked to one or more of the Commission members about it. On May 3, the Commission refused to hear Burton's grievance against Rice or her renewed grievance against Throop.

On May 2, Dalecki mimicked shooting a gun at Burton with his hand. On May 9, Burton told the UWP director of human resources, Janelle Crowley, about this gesture, which Burton took as a threat made in response to Burton's activities concerning *Burton I*. Dalecki was never disciplined for this gesture. On the same day, Crowley agreed to remove the letter of direction from Burton's personnel file. But soon after, Crowley spoke to Throop and then refused to remove the letter of direction.

On May 11, Strobl told Burton that she would remove Burton from a grant project. When the grant proposal was submitted a few weeks later, Burton was listed merely as a resource, not among key personnel. This meant that if the grant was approved, Burton would not be paid for any work she did on the project.

On June 3, the UWP chancellor, Dennis Shields, sent Burton a letter of direction. The letter reprimanded Burton for reporting Dalecki's gesture, Strobl's removal of Burton from the grant project, and other "retaliation and harassment," and for requesting that her grievances against Throop and Rice be heard. *Id.* ¶ 186.

On June 20, Burton filed an administrative charge with the U.S. Department of Education Office for Civil Rights and the Equal Employment Opportunity Commission (EEOC) concerning the events detailed above. The EEOC issued Burton a right-to-sue letter on October 14.

Burton filed suit in this court on January 17, 2017. Dkt. 1. She filed an amended complaint on April 9, 2017. Dkt. 10. The court has subject matter jurisdiction over Burton's claims under 28 U.S.C. § 1331 because they arise under federal law.

ANALYSIS

The claims litigated in *Burton I* are clearly intertwined with the claims Burton asserts

here. So before determining whether Burton states a claim for relief in this lawsuit, the court

will define the scope of those claims in light of the preclusive effect of *Burton I*. Doctrines of

preclusion "preclud[e] parties from contesting matters that they have had a full and fair

opportunity to litigate." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Montana v. United

States*, 440 U.S. 147, 153–54 (1979)). Claim preclusion bars successive litigation of "any claims

that were litigated or could have been litigated in a previous action," *Bell v. Taylor*, 827 F.3d

699, 706 (7th Cir. 2016), whereas issue preclusion bars "successive litigation of an issue of fact

or law actually litigated and resolved." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v.

Maine*, 532 U.S. 742, 748–49 (2001)). Defendants assert only issue preclusion as an affirmative

defense, but "a district court may raise the issue [of claim preclusion] sua sponte when . . .

preclusion clearly applies." *Reed v. Mackey*, 669 F. App'x 307, 308 (7th Cir. 2016) (citing

*Kratville v. Runyon*, 90 F.3d 195, 197–98 (7th Cir. 1996)).

Claim preclusion applies when (1) the two lawsuits "arise out of 'a common core of

operative facts'"; (2) the parties are identical or in privity; and (3) the first lawsuit resulted in

a final judgment on the merits. *Bell*, 827 F.3d at 706 (quoting *Roboserve, Inc. v. Kato Kagaku Co.,

Ltd.*, 121 F.3d 1027, 1034 (7th Cir. 1997)). Here, *Burton I* resulted in a final judgment on the

merits—it was dismissed at summary judgment. The plaintiff is the same in both cases, as are

two of the defendants, namely the Board and Throop. As for whether there is an identity of

the causes of action, Burton's amended complaint in this case is based on many of the facts at

issue in *Burton I*. Of course, having lost one discrimination lawsuit against the Board and

Throop does not mean that Burton is forever barred from bringing another lawsuit concerning

separate acts of discrimination by those defendants. But claim preclusion bars her from litigating those claims that she did bring or that she could have brought against the Board and Throop in *Burton I*.

Under federal common law, issue preclusion applies when the party against whom the issue was resolved had (1) a full and fair opportunity to litigate the issue in the previous suit and (2) "a meaningful opportunity to appeal the resolution of the issue." *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013).[2] Here, Burton had a full and fair opportunity to litigate the issues contained within her amended complaint in *Burton I*. She adduced evidence and made arguments regarding those issues in opposition of defendants' summary judgment motion. She conceded some points and argued others; but in the end, the court concluded that she "would not be able to prove critical elements of her claims at trial." *Burton I*, No. 14-cv-274, Dkt. 106, at 1. She later moved, pro se, for reconsideration of the court's summary judgment decision. After reviewing the additional evidence Burton assembled, the court concluded that she was not entitled to relief. *See id.* And Burton had a meaningful opportunity to appeal the resolution of the issues raised in the litigation before this court: she sought review by the Seventh Circuit Court of Appeals, which affirmed this court's judgment. *See* 851 F.3d 690. Burton does not argue that issue preclusion is inapplicable here. Rather, she argues that she isn't trying to relitigate claims or issues from *Burton I*. Any reference to *Burton I*, she says,

---

[2] Contrary to defendants' assertion, Wisconsin law is inapplicable here; federal common law applies. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("[F]ederal courts may look to the common law or to the policies supporting [issue and claim preclusion] in assessing the preclusive effect of decisions of other federal courts . . . ."); *In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004) ("The effect of a judgment in litigation is determined by the law of the jurisdiction that rendered the judgment . . . .").

is merely for background. So it appears that everyone is on the same page: everything the court decided in *Burton I* applies with equal force in *Burton II*.

So Burton is bound by this court's resolution of the issues in *Burton I*, and she may not relitigate the claims she brought, or could have brought, against the Board and Throop in *Burton I*. With this background, the court will now consider Burton's claims.

To withstand defendants' motion to dismiss under Rule 12(b)(6), Burton must allege in her amended complaint facts sufficient to state a plausible claim for relief, that is, facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court is not bound to accept alleged legal conclusions. *Id.* at 827. "[W]hen it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate." *Parungao*, 858 F.3d at 457 (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)). The court may take judicial notice of court filings in *Burton I*, among other things. *See id.*

## A.  Title VII

Before addressing the merits of Burton's Title VII claims, the court must determine whether it has jurisdiction over them. "A Title VII plaintiff must file her suit within 90 days from the date the EEOC 'gives notice' of her right to sue." *Bobbitt v. Freeman Cos.*, 268 F.3d 535, 538 (7th Cir. 2001) (quoting *Houston v. Sidley & Austin*, 185 F.3d 837, 838–39 (7th Cir. 1999)); *see* 42 U.S.C. § 2000e-5(f)(1). This is a "jurisdictional requirement." *Id.* at 537. Usually, the 90-day period "commences when the plaintiff receives *actual notice* of her right to sue." *Id.* at 538. "The law presumes timely delivery of a properly addressed piece of mail." *Id.*

Burton alleges that "the EEOC issued a right-to-sue letter" on Friday, October 14, 2016. Dkt. 10, ¶ 195. Adding 90 days to that date yields a deadline of Thursday, January 12, 2017. Burton filed this lawsuit on Tuesday, January 17, 2017, 95 days after the right-to-sue letter was issued. But this is presumably no more than 90 days after she actually received the letter, or at least the next business day after the 90-day mark. (Monday, January 16, 2017, was a federal holiday.) So her Title VII claims are not time-barred.[3]

Defendants contend that Burton "pled herself out of court" by alleging the October 14, 2016 issuance date "without also alleging a date she received her letter." Dkt. 20, at 12. But the October 14 date does not doom her claims; instead, it supports the inference that she timely filed this suit. Pleading the date of issuance rather than the date of receipt may be inartful, but it does not deprive the court of jurisdiction, at least not in this case. Of course, timely delivery is only presumed—defendants could overcome that presumption with evidence that Burton actually received the letter more than 90 days before she filed suit.

### 1. Retaliation

Title VII forbids retaliating against an employee because she has opposed any practice made unlawful by Title VII or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "To state a claim for retaliation under Title VII, [Burton] must allege that [she] 'engaged in statutorily protected activity' and suffered an adverse action 'as a result of

---

[3] Some district courts have adopted a five-day-delivery rule. *See, e.g.*, *Scott v. Coca Cola Enters., Inc.*, No. 05-cv-41, 2005 WL 1661808, at *4 (N.D. Ind. July 15, 2005) ("[T]he receipt date is presumed to be five days from the mailing date." (quoting *Loyd v. Sullivan*, 882 F.2d 218, 218 (7th Cir. 1989)). Burton timely filed her claims under both this rule and the more subjective "timely delivery" rule.

that activity.'" *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017) (footnote omitted) (quoting *Huri v. Office of the Chief Judge of the Circuit Court*, 804 F.3d 826, 833 (7th Cir. 2015)).

### a. Protected activity

Burton identifies what she contends are five protected activities: (1) filing *Burton I*; (2) reporting Rice's and Dalecki's harassment to Strobl; (3) requesting a hearing on her grievance against Rice; (4) requesting a hearing on her renewed grievance against Throop; and (5) asking Crowley to remove Throop's letter of direction from her personnel file. Filing *Burton I* is clearly a statutorily protected activity; so is reporting Dalecki's gun gesture, which Burton reasonably believed violated Title VII. *See* 42 U.S.C. § 2000e-3(a); *see also Alamo*, 864 F.3d at 555 & nn.40, 41.

Not so with the other three activities alleged. Throop does not allege that Rice's harassment—a false statement that Burton had a mental illness—was connected to Burton's Title VII–protected activities or otherwise violated Title VII. Title VII prohibits discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. It says nothing about physical or mental disabilities. So reporting Rice's statement to Strobl and requesting that the grievance against Rice be heard were not Title VII–protected activities, nor could Burton have reasonably believed that they were. *Alamo*, 864 F.3d at 555 n.40. The same is true for Throop's letter of direction. Perhaps Burton could have reasonably believed that the letter was prohibited by Title VII at one point, but by April 2016, when Burton renewed her grievance, this court had already issued its summary judgment opinion in *Burton I*, which held that Throop's letter was not a cover for retaliation and therefore did not violate Title VII.[4] 171

---

[4] Burton moved the court to reconsider its order in April 2016, *Burton I*, No. 14-cv-274, Dkt. 99 (W.D. Wis. filed Apr. 15, 2016); the court did not issue its order denying the reconsideration motion until June. *Burton I*, No. 14-cv-274, Dkt. 106, 2016 WL 3512287 (W.D. Wis. filed

F. Supp. 3d at 846. So Burton's actions aimed at removing Throop's letter of direction are not protected activities.

Defendants argue that any protected activity litigated in *Burton I*, such as the filing of *Burton I* itself, cannot form the basis of any claims in *Burton II*, seemingly invoking the doctrine of claim preclusion. But as explained above, claim preclusion only bars those claims that were brought or could have been brought in *Burton I*. If the allegedly adverse action did not occur until after *Burton I*, Burton could not have asserted a claim about it in *Burton I*. In other words, it is the date of the adverse action, not the protected activity, that matters. And as we'll soon see, Burton only identifies adverse actions that occurred after final judgment was entered in *Burton I*. (Defendants also argue that the alleged protected activities are "too remote in time to be actionable," Dkt. 20, at 9, but again, it's the date of the adverse action, not the protected activity, that matters for statute of limitations purposes. *See Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007)).

### b. Adverse action

A materially adverse action is one that would dissuade a reasonable employee from engaging in the protected activity. *See Burton*, 851 F.3d at 696. It does not include "petty slights or minor annoyances," *id.*, and must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boss v. Castro*, 816 F.3d 910, 918–19 (7th Cir. 2016) (quoting

---

June 22, 2016). Without getting into the weeds, the evidence and arguments that Burton presented in the reconsideration motion were of the same variety as those that the court had already explained could not establish "that Throop did not honestly believe the reasons that she gave for disciplining Burton." *Id.* at *5 ("Burton failed to meet this standard at summary judgment, and her recent submissions do not change that."). So despite the pending motion for reconsideration, Burton could not have reasonably believed that Throop's letter violated Title VII.

*Hobbs v. City of Chicago*, 573 F.3d 454, 463–64 (7th Cir. 2009)). Burton identifies what she contends are three materially adverse actions: (1) Shields placed a letter of direction in her personnel file; (2) Strobl listed her as a resource, not key personnel, on a grant proposal; and (3) the Commission refused to hear her renewed grievance against Throop. The court will address each one in turn.

First, Burton alleges that Shields "reprimanded" Burton in a letter of direction, which "placed [Burton's] name, reputation, honor, and/or integrity at stake" and "limited [her] future employment opportunities." Dkt. 10, ¶¶ 186–92. This is a materially adverse employment action. In the *Burton I* summary judgment opinion, this court recognized that "a formal letter of direction and a request for discipline" are materially adverse actions. 171 F. Supp. 3d at 845. On the same day, the Seventh Circuit issued an opinion holding that "[u]nfair reprimands or negative performance reviews, unaccompanied by tangible job consequences, do not suffice." *Boss*, 816 F.3d at 919. (The *Burton I* defendants didn't contest this court's materially-adverse-action conclusion on appeal, so the Seventh Circuit didn't have a chance to weigh in on the letter-of-direction issue. *See Burton*, 851 F.3d at 697.) Here, Burton alleges a reprimand coupled with a future consequence, the loss of employment opportunities. The Seventh Circuit has explained that employment actions that mar the plaintiff's reputation and otherwise stunt the plaintiff's career may be materially adverse. *See O'Neal v. City of Chicago*, 392 F.3d 909, 911–12 (7th Cir. 2004); *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996) (holding that "retaliation that impinges on [the plaintiff's] future employment prospects" is actionable under Title VII). Under that reasoning, Burton alleges a tangible job consequence. So her allegations concerning Shields's letter of direction establish a materially adverse action.

Second, Burton alleges that Strobl listed her as a resource, rather than key personnel, on a grant proposal. This was not a materially adverse employment action because it didn't result in "material harm." *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1030 (7th Cir. 2004). Burton alleges that if the grant was approved, she would not be paid for any work she did on the project because her name was removed from the list of key personnel. She argues that this would result in a diminishment of her "compensation, fringe benefits, or other financial terms of employment." Dkt. 19, at 16 (quoting *O'Neal*, 392 F.3d at 911). But she does not allege that she received *less* pay than she otherwise would have; instead, she only speculates that she might have obtained *more* money (from an outside source) if the grant was approved. And there's no indication that it was approved. So Strobl's action essentially resulted in a continuation of the status quo. That's not a materially adverse action.

Third, Burton alleges that the Commission refused to hear her renewed grievance against Throop, in which she asked that Throop's letter of direction be removed from her personnel file. This was not a materially adverse employment action because Burton was not automatically entitled to a hearing. "[A]n adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit to which she is not automatically entitled." *Hottenroth*, 388 F.3d at 1033. Burton alleges that "[t]he grievance policy is silent as to the issue of reinstated or renewed grievances." Dkt. 10, ¶ 140. So she was not automatically entitled to a hearing, and the Commission was well within its discretion to refuse to hear a grievance that Burton had voluntarily withdrawn the year before. So the Commission's treatment of Burton's renewed grievance was not a materially adverse action.

### c. Causal connection

To state a retaliation claim, Burton must allege that her Title VII–protected activity was the "but for" cause of Shields's letter of direction to state a retaliation claim—that is, that Shields would not have written the letter of direction without Burton taking protected activities. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 n.1 (7th Cir. 2014). To recap, the protected activities at issue are (1) filing *Burton I* and (2) reporting Dalecki's harassment to Strobl. Burton alleges that Shields's letter of direction explicitly reprimanded her for "reporting retaliation and harassment, including, but not limited to, Dr. Dalecki's threats [and] attempting to obtain a grievance hearing against . . . Rice." Dkt. 10, ¶¶ 186–88. The text of the letter, as alleged, makes clear that it was written because of Burton's protected activities. So Burton states a Title VII retaliation claims concerning Shields's letter of direction. All other retaliation claims are dismissed.

### 2. Hostile work environment

"To state a hostile work environment claim . . . a plaintiff must allege that: (1) he 'was subject to unwelcome harassment'; (2) 'the harassment was based on [his race, color, religion, sex, or national origin]'; (3) 'the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment'; and (4) 'there is a basis for employer liability.'" *Alamo*, 864 F.3d at 549 (quoting *Huri*, 804 F.3d at 833–34); *see* 42 U.S.C. § 2000e-2. Burton does not allege that she was harassed because of her race, color, religion, sex, or national origin. Rather, she alleges that the retaliatory acts by her co-workers were so severe and pervasive that they created a hostile working environment. *See* Dkt. 19, at 17–18. Burton does not explain how such a claim—a hostile working environment created by retaliation alone, rather than one of the personal characteristics listed in Title VII—is

actionable; she provides no statutory language or case law indicating that it is. It seems to duplicate Burton's retaliation claim. Even if such a claim were actionable in theory, Burton could not bring one here. As discussed above, she alleges only one potentially retaliatory act: Shields's letter of direction. That act is not "severe or pervasive" enough to create a hostile working environment; the loss of future employment opportunities does not alter the conditions of employment or create a hostile or abusive working environment. The other arguably adverse acts, listing Burton as a resource on a grant proposal and refusing to hear her grievances, are not sufficient to create a hostile environment, either. Burton does not state a hostile work environment claim.

## B. Constitutional claims

Burton brings three constitutional claims under 42 U.S.C. § 1983 against the defendant Commission members: a procedural due process claim, a failure to intervene claim, and a "conspiracy to violate procedural due process" claim. Dkt. 10, at 20. The latter two claims both rely on the first. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions."); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("[F]or there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation . . . ."). So the court will address the straight due process claim first.

Burton claims that the Commission violated her procedural due process rights when it declined to hear her renewed grievance against Throop. To state a procedural due process claim, Burton must "allege (1) that she had a cognizable liberty interest under the Fourteenth Amendment; (2) that she was deprived of that liberty interest; and (3) that the deprivation was without due process." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

Burton conflates the first and third elements of a procedural due process claim, arguing that she had a property interest in a grievance hearing and that she was deprived of that interest without a grievance hearing. Putting aside the dubious logic of this argument, Burton has not alleged a cognizable liberty or property interest. Burton cites *Swick v. City of Chicago* in support of her argument that she has "a property interest in a grievance hearing," Dkt. 19, at 7, but *Swick* held that a police officer did *not* have a property interest in "the purely dignitary or otherwise nonpecuniary dimensions of employment." 11 F.3d 85, 87 (7th Cir. 1993). The denial of a grievance hearing alone, like the suspension with sick pay of a police officer, is one of the "intangible injuries normally small and invariably difficult to measure that must be accepted as the price of living in society rather than made a federal case out of." *Id.* Certainly, if Burton were to have identified a deprivation of an actual liberty or property interest—lost wages, for example, or some other harm "having measurable economic value"—the deprivation of that interest without a statutorily-mandated hearing would violate the Fourteenth Amendment. *Id.* But a "minor deprivation is [not] actionable for its own sake when no other right is threatened." *Id.*; *accord Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013) ("[A] plaintiff does not have a federal constitutional right to state-mandated process."); *Barrow v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007) ("[A] job action that causes no pecuniary loss whatsoever does not implicate the Constitution." (quoting *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005))). Burton does not state a procedural due process claim. Burton's remaining constitutional claims hinge on the procedural due process claim, so the court will dismiss all of Burton's claims under § 1983. Because only one retaliation claim remains against the Board, the court will dismiss the individual defendants from the case.

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss, Dkt. 15, is GRANTED in part and DENIED in part, consistent with the opinion above.

2. Defendants Elizabeth Throop, Daniel Fairchild, Elizabeth Frieders, Qiong Li, Mary Rose Williams, and Staci Strobl are DISMISSED from the case.

Entered September 5, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge