IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SABINA BURTON,

              Plaintiff,

     v.

BOARD OF REGENTS OF THE UNIVERSITY OF
WISCONSIN SYSTEM, CHANCELLOR DENNIS
SHIELDS, JANELLE CROWLEY, DR. STACI
STROBL, DEBORAH RICE, DR. MELISSA
GORMLEY, DR. ELIZABETH THROOP, ROBERT
ATWELL, JOHN ROBERT BEHLING, JOSE
DELGADO, DR. TONY EVERS, MICHAEL GREBE,
DR. EVE HALL, MIKE JONES, TRACEY KLEIN,
REGINA MILLNER, JANICE MUELLER, DREW
PETERSEN, CHRIS PETERSON, JASON PLANTE,
RYAN RING, BRYAN STEIL, S. MARK TYLER, and
GERALD WHITEBURN,

              Defendants.

OPINION and ORDER

17-cv-36-jdp

Plaintiff Sabina Burton was formerly a tenured associate professor of criminal justice at the University of Wisconsin-Platteville (UWP). This lawsuit concerns alleged discrimination and retaliation that she experienced after she assisted a UWP student in reporting an allegation of sexual harassment by another UWP professor in 2012.

In a previous order, the court dismissed all of Burton's claims under Federal Rule of Civil Procedure 12(b)(6) except one—a Title VII retaliation claim against the Board of Regents. Dkt. 21. Since then, Burton has amended her complaint several times, in part to take into account new allegedly retaliatory actions, including her termination from UWP. Dkt. 29; Dkt. 41; Dkt. 51. She is now asserting claims for retaliation under Title VII, the Rehabilitation Act, and the First Amendment; disability discrimination under the Rehabilitation Act and the Equal Protection Clause; national-origin discrimination under Title VII and the Equal Protection

Clause; failure to accommodate her disability under the Rehabilitation Act; and denial of due process under the Fourteenth Amendment.[1]

Defendants have once again moved to dismiss many of Burton's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. 56. The court will grant defendants' motion in part: Burton's hostile-work-environment and procedural due process claims will be dismissed in full. Her Title VII retaliation claims will be dismissed in part. The court will deny defendants' motion on the remaining claims.

## ALLEGATIONS OF FACT

The court draws the following facts from Burton's fourth amended complaint, Dkt. 51, and accepts them as true for the purpose of deciding defendants' motion. *Parungao v. Comm. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). The court draws facts about the procedural history of the case from Burton's first lawsuit against UWP, *Burton v. Bd. of Regents of the Univ. of Wis. Sys. (Burton I)*, No. 14-cv-274 (W.D. Wis. filed Apr. 14, 2014), and the court's prior 12(b)(6) order in this case, *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, No. 17-cv-36-JDP, 2017 WL 3891702 (W.D. Wis. Sept. 5, 2017).

In 2012, Burton reported an incident of alleged sexual harassment of a student by a fellow professor to defendant Elizabeth Throop, then-dean of UWP's College of Liberal Arts and Education. In the months following this report, UWP faculty and staff took several acts that Burton perceived as retaliatory, such as making veiled criticisms of the way that she had handled the student's complaint and withdrawing support from a cybersecurity program that

---

[1] Burton also asserted class-of-one equal protection claims, *see* Dkt. 51, ¶¶ 528–39, but she has since voluntarily dismissed them. Dkt. 64, at 14.

she was developing. Burton filed complaints with the Wisconsin Department of Workforce Development—Equal Rights Division and the Equal Employment Opportunity Commission, alleging that she was being retaliated against for engaging in protected activity. In April 2014, Burton filed *Burton I* in this court, alleging discrimination and retaliation by the Board of Regents, Throop, and two other UWP employees.

In March 2016, this court granted summary judgment in favor of defendants and dismissed *Burton I*. *See* 171 F. Supp. 3d 830. The court did so because Burton conceded that she could not succeed on many of her claims and adduced no evidence that she suffered materially adverse actions as a result of filing charges of discrimination and bringing the lawsuit. *Id.* at 833–34. The court also determined that Burton's advocacy on behalf of the student was not protected activity within the meaning of Title VII, because the student was not an employee of the university and therefore "Burton was not opposing an unlawful *employment* practice, which is a required element of the retaliation claim" under Title VII. *Id.* at 843. Burton appealed; the Seventh Circuit affirmed. *See Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690 (7th Cir. 2017).

In her original complaint in this case, Burton alleged that she experienced discrimination and harassment from her UWP colleagues in the aftermath of *Burton I*. Defendants moved to dismiss Burton's first amended complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 15. The court granted that motion on all but one claim: a Title VII retaliation claim against the Board of Regents. *See Burton*, 2017 WL 3891702, at *4–6.[2] After that ruling, the sole remaining issue was whether Burton's Title VII-protected activity (i.e.,

---

[2] The court will assume familiarity with this decision and will not reiterate it here.

filing *Burton I* and reporting a colleague's threatening hand gesture) was the but-for cause of the "letter of direction" that Burton received from defendant Dennis Shields, the UWP chancellor, in June 2016.

Burton then sought leave to file second, third, and fourth amended complaints, asserting new theories of liability and adding new allegations and claims in light of new events, including her termination. Defendants did not oppose these requests, so the court granted them.

Burton alleges the following in her fourth amended complaint.

Beginning in November of 2014, Deborah Rice, a fellow professor in the criminal justice department, began "making a series of false and/or discriminatory statements" about Burton. Dkt. 51, ¶ 107. Specifically, in November 2014, Rice stated that Burton "is prejudiced against East Germans" and "had a mental illness." *Id.* ¶¶ 113, 131. (Burton is German, and does not have a mental illness.) Also, while Burton was out on FMLA leave in the spring of 2015 due to an ulcer condition, Rice "questioned the legitimacy" of that leave to multiple UWP faculty and staff. *Id.* ¶ 152. In April 2016, Burton reported these comments to defendant Janelle Crowley (UWP's director of human resources), Staci Strobl (chair of the criminal justice department), and various members of the UWP Complaints and Grievances Commission. Chancellor Shields became aware of the comments shortly thereafter. Burton requested a grievance hearing against Rice based on these comments, but her request was denied.

Beginning in August 2016, UWP officials began investigating Burton based a complaint lodged by Rice. Burton says that defendants took these actions to retaliate against her for her prior protected activity. This investigation caused Burton significant stress, which in turn exacerbated Burton's painful ulcer disorder. Burton emailed Crowley with a note from her

doctor asking that the investigation be postponed for four weeks "to lower the chance of serious health consequences." Dkt. 51, ¶ 189. Crowley, acting as an agent of the Board of Regents, denied this request, and stated that the investigation would move forward even if Burton was not able to participate.

While this investigation was pending, Burton suffered additional setbacks at work. One of Burton's colleagues in the criminal justice department, Patrick Solar, demanded that Burton's husband remove references to Solar from his website, and Rice made additional false and harassing comments about Burton. In September 2016, Rice stated that that Burton "had previously lied about having Jewish heritage" and that her "father had a relationship with Nazis." *Id.* ¶¶ 118, 122. In October 2016, she repeated those allegations. *Id.* ¶¶ 116, 118, 146. She also stated that Burton is "frequently bizarre," that her decision to travel to Germany for the weekend was "manic and irrational," that Burton "has a mental health disorder that is undiagnosed and untreated," and that she is "unstable," "narcissistic," and "has frequent episodes of manic behavior." *Id.* ¶¶ 134, 140, 143, 148, 149. Burton was also assigned a less prestigious teaching schedule for the spring 2017 term. Burton complained about harassment and retaliation to defendant Melissa Gormley (the interim dean of the College of Liberal Arts and Education at UWP) in November and December of 2016, asking her to intervene; Gormley did not do so.

In December 2016, Gormley and Elizabeth Throop (the acting provost and vice chancellor for academic affairs at UWP) learned that Burton had sent a letter to the Wisconsin Attorney General's office complaining about a culture of corruption and retaliation at UWP. In response to this letter and other allegations against Burton, Gormley and Throop filed a complaint with Chancellor Shields seeking Burton's tenure revocation and dismissal from

UWP. They accused Burton of violating various laws and ethical practices by publishing audio recordings and transcripts of criminal justice department meetings; harassing, intimidating, and threatening her co-workers and ignoring directives to stop doing so; and involving students in her personal grievances—charges that Burton disputes or denies.

This complaint triggered proceedings under the administrative rules for dismissing tenured faculty members in the University of Wisconsin system. *See* Wis. Admin. Code UWS § 4.01 *et seq.* In January 2017, Chancellor Shields suspended Burton from her teaching duties and banned her from campus pending the outcome of the administrative proceedings. UWP officials also refused to authorize Burton to continue teaching as an adjunct at UW-Milwaukee, causing Burton to lose expected income.

Burton requested a hearing in front of an appeals panel, as provided under Wisconsin Administrative Code UWS § 4.04. The five members chosen to serve on the appeals panel were biased against her and had already made up their minds concerning her tenure revocation and termination before the hearing took place. The hearing proceeded over the course of three days: May 25, September 19, and November 30, 2017. Burton requested that the hearings proceed in half-day increments to accommodate her ulcer symptoms, but her request was ignored. Burton had a particularly bad ulcer flare-up on the night before the May 25 hearing and was unable to attend as a result. The appeals panel proceeded without Burton, giving her no chance to confront or cross-examine the witnesses who testified against her.

The September 19 and November 30 hearings suffered from procedural defects. Witnesses were not sworn, nor were they sequestered while other witnesses testified. The appeals panel did not give Burton enough time to adequately present her defense, she was

unable to present all of the testimony she wanted to, and she was only able to cross-examine one witness—Chancellor Shields.

After the hearing, the appeals panel recommended that Burton be terminated. Chancellor Shields concurred in the recommendation and sent it to the president of the University of Wisconsin system and the Board of Regents. On June 8, 2018, the Board of Regents issued its decision terminating Burton and revoking her tenure.

The court will discuss more of Burton's allegations as they become relevant to the analysis.

ANALYSIS

A. Overview of the claims

Burton does not clearly set out the scope of her claims in her 546-paragraph complaint, and her brief in opposition to defendants' motion to dismiss does little to clarify things. The theory that animates her case is that UWP undertook a campaign of retaliation against her based on her 2012 sexual harassment-related advocacy (the central issue in *Burton I*) and the various protected activities she engaged in along the way. But she also asserts new discrimination-based theories. Although many of the new claims are not developed, the court will set forth below its understanding of the scope of the claims asserted in Burton's fourth amended complaint.[3]

---

[3] Burton alleges that her colleague, Patrick Solar, threatened her because of her Title VII protected activities in November of 2016 when he demanded that Burton's husband remove all references to Solar from his website. Dkt. 51, ¶ 237. Solar is not a defendant in this case, and Burton does not explain how the allegations about him relate to any adverse actions taken by defendants. Defendants treat these allegations as a separate Title VII retaliation claim and move to dismiss it. Burton didn't respond to their argument in her opposition brief. The court

**Statutory retaliation**. The Board of Regents violated Title VII and the Rehabilitation Act by:

- issuing Burton a letter of direction in June 2016

- maintaining her personnel file in a discriminatory manner

- assigning her to a less prestigious teaching schedule in the spring of 2017

- withholding an investigation report from her

- initiating tenure revocation proceedings against her

- suspending her from teaching at UW-Milwaukee

- terminating her

The Board of Regents did these things to retaliate against Burton for:

- filing *Burton I*

- reporting an offensive hand gesture made by a colleague

- reporting Rice's anti-German and disability-related comments to Crowley and Strobl in April 2016

- reporting ongoing harassment and retaliation to Gormley in November and December of 2016

- requesting ulcer-related accommodations in September 2016 and May 2017

**First Amendment retaliation**. Defendants Gormley, Throop, Chancellor Shields, and all 17 individually-named members of the Board of Regents violated the First Amendment by initiating tenure revocation proceedings and terminating Burton because of complaints she made to then-Governor Scott Walker, the Wisconsin Waste, Fraud, and Abuse Hotline, and the Wisconsin Attorney General about corruption and retaliation at UWP. Throop separately

---

agrees with defendants that Burton has alleged no basis for this claim and will dismiss it.

violated the First Amendment by filing police reports against Burton when she learned of Burton's complaint to Governor Walker.

**Discrimination**. The Board of Regents violated Title VII and the Rehabilitation Act and defendants Crowley, Strobl, and Chancellor Shields violated the Equal Protection Clause by terminating Burton (or contributing to the termination decision) because Burton is German, because they believed she had a mental illness, and because she suffered from an ulcer disorder.

**Hostile work environment**. The Board of Regents violated Title VII and the Rehabilitation Act by failing to prevent or correct harassment by Deborah Rice based on Burton's German national origin and her perception that Burton suffered from a mental illness. Rice violated the Equal Protection Clause by intentionally harassing Burton based on her German national origin and her perception that Burton suffered from a mental illness.

**Failure to accommodate**. The Board of Regents violated the Rehabilitation Act by: (1) refusing to delay an investigation for four weeks while Burton was suffering from symptoms related to her ulcer disorder; and (2) refusing to postpone or modify the schedule for Burton's tenure revocation hearings to accommodate her ulcer disorder.

**Due Process**. Gormley, Throop, Chancellor Shields, and all 17 individually-named members of the Board of Regents failed to provide Burton due process during the tenure-revocation proceedings.

Defendants are not challenging all of Burton's claims in their motions to dismiss. Specifically, defendants are not moving to dismiss the Title VII retaliation claim against the Board of Regents that survived the original motion to dismiss, which is that Burton was issued a "letter of direction" in June 2016 because she filed *Burton I* and reported a threatening hand gesture. Defendants also are not challenging the following new claims: (1) additional Title VII

retaliation claims based on three new alleged adverse employment actions (i.e., the initiation of tenure revocation proceedings, suspension of Burton from her adjunct teaching position at UW-Milwaukee, and termination) and one new instance of protected activity (i.e., reporting ongoing harassment and retaliation to Gormley in November and December of 2016); and (2) the Rehabilitation Act claim based on the Board of Regents' failure to accommodate Burton's disability by proceeding with the May 25, 2017 hearing while she was suffering from an ulcer. Because defendants are not challenging these claims, the court need not discuss them further in this opinion.

## B. Legal standard

Under Rule 12(b)(6), Burton must allege facts sufficient to state a plausible claim for relief, meaning facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a Rule 12(b)(6) motion, Burton need only "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original). But the court is not bound to accept legal conclusions. *Id.* at 827. "[W]hen it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate. *Parungao*, 858 F.3d at 457 (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

## C. Retaliation

Title VII prohibits employers from discriminating against employees on the basis of national origin, and the Rehabilitation Act prohibits employment discrimination against

qualified persons with disabilities by any program receiving federal assistance. Both make it unlawful to retaliate against an employee for opposing practices made unlawful by those statutes. *See* 42 U.S.C. § 2000e-3(a) (Title VII retaliation provision); 29 U.S.C. § 794(d) (providing that claims under the Rehabilitation Act incorporate the same substantive standards as the Americans with Disabilities Act, which has a retaliation provision analogous to Title VII's, *see* 42 U.S.C. § 12203(a)).

A plaintiff states a claim for retaliation if she alleges "that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015). "The protected activity must be specifically identified," *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014), but the plaintiff does not have to plead facts about why she believes her protected activity caused the adverse actions. *Huri*, 804 F.3d at 833.

1. **Title VII**

Defendants ask the court to limit Burton's Title VII claim to three protected activities: filing *Burton I*, reporting the hand gesture, and complaining to Gormley about harassment and retaliation in November and December of 2016. But Burton's complaint includes another allegedly protected activity—her complaint to Crowley, Strobl, and members of the UWP Complaints and Grievances Commission in April 2016 about Rice's anti-German comment. Dkt. 51, ¶¶ 155, 160. Because defendants do not explain why Burton's claim should be limited to the conduct it identifies, the court declines to do so.

Defendants argue that three of the allegedly retaliatory actions alleged by Burton are not sufficiently adverse as a matter of law: (1) Burton's allegation that her personnel file was maintained in a discriminatory manner; (2) her allegation that she was assigned a less

prestigious teaching schedule for the spring 2017 term; and (3) her allegation that an investigation report was withheld from her. "[A]n action is not materially adverse unless it represents a *significant* alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation, or career prospects." *Stephens v. Erickson*, 569 F.3d 779, 791 (7th Cir. 2009).

Burton does not allege that the personnel file or the less prestigious teaching schedule affected her work hours or compensation, but she does say that these actions stunted her future employment prospects. Dkt. 51, ¶¶ 212, 259. At the pleading stage, this is sufficient to allege an adverse employment action. *See O'Neal v. City of Chicago*, 392 F.3d 909, 911–12 (7th Cir. 2004) (acknowledging that employment actions that mar a plaintiff's reputation and otherwise stunt her career may be materially adverse).

This is not true of the third alleged adverse action. Burton says that she was subject to an investigation by UWP officials that culminated in November 2015. The resulting report is dated November 24, 2015, but Burton did not receive a copy of that report until December 9, 2016. Dkt. 51, ¶¶ 217, 218. From this, Burton infers that someone associated with defendants (she doesn't say who) withheld the report from her for over a year. This does not constitute an adverse employment action because Burton does not allege that her inability to review the report had any effect on her terms and conditions of employment and the court sees no reason why a failing to disclose that report would dissuade a reasonable employee from engaging in protected activity. So the court concludes that withholding the investigation report does not constitute a materially adverse employment action as a matter of law.

## 2. Rehabilitation Act

Burton contends that the Board of Regents retaliated against her in violation of the Rehabilitation Act by subjecting her to adverse actions because (1) Burton reported Rice's comments about Burton having a mental illness and (2) Burton requested a four-week delay in the investigation against her in September 2016 as well as modifications to the termination hearing schedule to accommodate her ulcer disorder. Defendants ask the court to dismiss this claim in full. They contend that Burton has failed to plead facts causally linking any of the alleged protected activity in the complaint to the adverse employment actions. But, as noted above, a plaintiff does not need to identify evidence of a retaliatory motive to state a claim for retaliation. *Huri*, 804 F.3d at 833. This argument is more appropriate for a motion for summary judgment, so the court will deny defendants' motion to dismiss Burton's Rehabilitation Act retaliation claims.

## D. First Amendment retaliation

Burton alleges that she engaged in First Amendment-protected activity for which she faced retaliation. Burton alleges three instances of such protected activity—one in August of 2015, another in August and September of 2016, and a third in December 2016.

In August 2015, Burton sent a letter to then-Governor Scott Walker complaining of "bias against conservative faculty and staff (and prospective faculty and staff), violations of state and federal law, and retaliation for speaking out about sexual harassment of a student." Dkt. 51, ¶ 264. Governor Walker's office referred the complaint back to the UW system, and in September 2015 it was routed to Throop. After receiving this letter, Throop contacted UWP Human Resources to report Burton. She also "filed police reports" against Burton, which Burton says constituted a materially adverse employment action. *Id.* ¶¶ 271, 275. Burton

alleges that the Board of Regents, through its agents, learned of the letter, and contends that their termination decision was influenced by it.

In August 2016, Burton lodged two complaints with UWP's chief human resources officer. The first was against Chancellor Shields for "harassment, retaliation, disparate treatment, misuse of funds, and violations of University policy." *Id.* ¶ 220. The second was against Throop for "retaliation, falsifying information, fabricating allegations, witness tampering, interference with the grievance process, interference with faculty governance, and lying under oath." *Id.* ¶ 222. When she received no response from human resources by September, Burton filed these same complaints with the Wisconsin Waste, Fraud, and Abuse Hotline. She also filed a complaint about Rice with the Hotline, although she does not say specifically what the complaint was about. She says that Throop and Chancellor Shields became aware of these complaints at some point prior to December 15, 2016.

Finally, in December 2016, Burton sent a complaint to the Wisconsin Attorney General, alleging "corrupt behavior on the part of UWP officials and a pattern and practice of punishing employees who report violations of law." *Id.* ¶ 282. She contends that multiple UWP administrators, including Chancellor Shields, Gormley, and the Board of Regents, became aware of this complaint.

Burton contends that the above conduct is protected by the First Amendment and was the impetus for her tenure revocation proceedings, the decision to terminate her, and Throop's decision to file police reports about her. To prevail on a claim of First Amendment retaliation, Burton must show that her First Amendment-protected activity was "at least a motivating factor" in defendants' decision to take a retaliatory action that would likely deter future First Amendment activity. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff*

*v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). But because Burton was a public employee, she must also show that (1) she made the speech as a private citizen; (2) the speech addressed a matter of public concern; and (3) her interest in expressing that speech was not outweighed by the state's interest as an employer in promoting effective and efficient public service. *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018).

Defendants move to dismiss Burton's retaliation claims on the theory that her complaints to Governor Walker and to the Wisconsin Waste, Fraud, and Abuse Hotline were not motivated by matters of public concern and were merely "personal employment grievances." Dkt. 57, at 22. They support this assertion using new allegations drawn from outside the complaint. This is improper on a motion to dismiss. At this stage, the court must construe all of Burton's allegations as true. Burton's complaint sufficiently pleads that her communications with Governor Walker, the Hotline, and the Wisconsin Attorney General's Office discussed matters of public concern. So the court will deny defendants' motion to dismiss Burton's First Amendment retaliation claims.

## E. Discrimination

Defendants also challenge Burton's Title VII and Rehabilitation Act discrimination claims because she failed to plead enough facts to support them. Specifically, they contend that Burton has failed to plead that any of the defendants took any adverse employment action against her because she was German, had an ulcer disorder, or was perceived as being mentally ill. But it may be reasonably inferred from the context in the complaint that Burton believes that the decision to terminate her was motivated in part by disability and national origin related considerations. She says as much in her opposition brief. *See* Dkt. 64, at 11 ("The Plaintiff has good reason to believe that these remarks by Defendant Rice influenced the other Defendants

in such a way that they contributed to her termination."). Inartful pleading aside, all Burton needs to do to state a discrimination claim under these federal statutes is "identif[y] the type of discrimination that she thinks occur[red] . . . by whom . . . and when." *Swanson*, 614 F.3d at 405.

Similarly, under the Equal Protection Clause, it is sufficient if the plaintiff alleges that defendants acted "with a discriminatory purpose and discriminated against [her] because of [her] membership in an identifiable group." *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 697 (7th Cir. 2015). Burton has met this minimal burden here. Specifically, she alleges (1) that Strobl, Crowley, and Shields discriminated against her by refusing to act in response to Rice's harassment because of Burton's German national origin and disability; and (2) that Shields initiated an investigation into Burton because of Burton's German national origin and disability. *See* Dkt. 51, ¶¶ 498–501, 508–11. So the court will deny defendants' motion to dismiss Burton's discrimination claims.

## F. Hostile work environment

Burton alleges that she was subjected to a hostile work environment based on Rice's national origin and mental illness-related comments, in violation of Title VII, the Rehabilitation Act,[4] and the Equal Protection Clause. She seeks to hold the Board of Regents liable for the hostile work environment under Title VII and the Rehabilitation Act on the theory that UWP officials knew about Rice's harassment but failed to do anything to address

---

[4] The Seventh Circuit hasn't decided whether hostile-work-environment claims are actionable under the Rehabilitation Act, but it has routinely assumed for purposes of analysis "that the Rehabilitation Act provides such a cause of action . . . where . . . the facts do not require [resolution of] the issue in order to decide the case." *Bellino v. Peters*, 530 F.3d 543, 551 (7th Cir. 2008).

it. And she seeks to hold Rice individually liable for her conduct under the Equal Protection Clause.

To succeed on hostile-work-environment claims against the Board of Regents, Burton must demonstrate that: (1) she was the object of unwelcome harassment; (2) the harassment was based on the protected characteristic in question (i.e., disability or German national origin); and (3) the harassment was sufficiently severe and pervasive so as to alter the conditions of employment; and (4) there is a basis for employer liability. *Huri*, 804 F.3d at 834 (articulating elements of a Title VII hostile-work-environment claim); *Bellino*, 530 F.3d at 551 (applying Title VII hostile-work-environment standard in Rehabilitation Act case). To succeed on hostile-work-environment claims against Rice, Burton need not prove the fourth of these elements, but must independently show that the harasser had "an intent to discriminate [against her] *because* of her status as a [German or disabled person] and not because of characteristics of her [identity] that are personal to her." *Trautvetter v. Quick*, 916 F.2d 1140, 1151 (7th Cir. 1990) (emphasis in original). The allegations in Burton's complaint do not satisfy these elements, so the court will dismiss Burton's hostile-work-environment claims.

On the disability-related hostile-work-environment claim, Burton pleads herself out of court on the second element. Defendants contend that Burton cannot show that Rice's harassment was based on any alleged disability because Burton has alleged that she does not suffer from a mental illness. But a plaintiff could assert claims under the Rehabilitation Act if she can show that her employer *regarded* her as disabled, *see* 29 U.S.C. § 705(20)(B)(iii), and Burton asserts that "Rice, through her statements, indicated that she believed [that Burton] was suffering from a mental disability." Dkt. 64, at 8. The real problem is that Burton alleges in her complaint that Rice "knew" at the time she made the mental-illness allegations that

those allegations were "false" and that Burton did *not* suffer from a mental illness. Dkt. 51, ¶¶ 133, 136, 139, 142, 145, 147. So Burton has indeed pleaded herself out, because Rice could not have regarded Burton as disabled if she knew that the statements she was making were false.

Burton's Rehabilitation Act, Title VII, and Equal Protection Clause hostile-environment claims all fail on the third element, as none of Rice's alleged comments were sufficiently severe or pervasive to alter the conditions of employment. The complaint alleges that Rice only made mental illness and national origin-related comments on three occasions over the course of two years. "[R]elatively isolated instances of nonsevere misconduct will not support a claim of a hostile environment." *Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998); *see also Milsap v. City of Chicago*, No. 16-cv-4202, 2018 WL 3361889, at *5 (N.D. Ill. July 10, 2018) (collecting cases).

For these reasons, Burton's hostile-work-environment claims fail as a matter of law and must be dismissed.

## G. Failure to accommodate

Defendants move to dismiss one of the two failure-to-accommodate claims that Burton asserts under the Rehabilitation Act. Beginning in August 2016, Burton was under investigation based on a complaint against her lodged by Rice. Burton alleges that on September 12, she emailed Crowley a note from her doctor, which stated that the investigation was causing Burton increased stress and requested that it be postponed for four weeks "to lower the chance of serious health consequences." Dkt. 51, ¶ 189. Crowley, acting as an agent of the Board, denied this request, and stated that the investigation would move forward even if Burton was not able to participate. On September 21, Burton emailed Crowley again,

reiterating her request that the investigation be delayed by one month. No one responded to this second request.

To prevail on a claim for failure to accommodate under the Rehabilitation Act, a plaintiff must demonstrate: (1) that she was a qualified individual with a disability; (2) that the employer was aware of the disability; and (3) that the employer failed to reasonably accommodate the disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013). A qualified individual with a disability is someone who, "with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(l).

Defendants contend that Burton hasn't satisfied these elements because she does not allege that she needed the accommodation to work or that she suffered an adverse employment action. Defendants' point is well taken, but it is premature. At the pleading stage, it is reasonable to infer that Burton needed the accommodation because her doctor said she needed it. So the court will deny the motion to dismiss as to this claim. But at summary judgment or trial, Burton will have to come forward with specific evidence showing that the failure to accommodate her disability "prevent[ed] her from performing an essential function of the particular job at issue," *Brumfield*, 735 F.3d at 633, and that the accommodation she sought would have been effective, *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 288–89 (7th Cir. 2015).

## H. Fourteenth Amendment procedural due process

Burton contends that her tenure revocation proceedings violated her right to due process in numerous ways. She brings this claim against Chancellor Shields, who concurred in the appeals council's procedurally flawed termination recommendation, and the 17 members of the Board of Regents, who rendered the final approval and revoked Burton's tenure.

To state a procedural due process claim, Burton must allege (1) that she had a cognizable liberty or property interest under the Fourteenth Amendment; (2) that she was deprived of that interest; and (3) that the deprivation was without due process. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Tenured college professors have interests in their continued employment that are safeguarded by due process. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77 (1972). When faced with termination, they are "entitled to notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). While some pre-termination hearing is necessary, it need not be elaborate. *See id.* at 545 ("In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." (quoting *Mathews v. Eldridge*, 424 U.S. 319, 343 (1976))).

Defendants contend that Burton has failed to state a procedural due process claim because her complaint, taken as true, indicates that she received at least the minimum level of pre-deprivation process required by the Constitution. Burton's complaint makes clear that she was provided with a statement of the charges against her; she was afforded three hearings over the course of several months; and she was able to submit evidence and respond to the charges. Defendants also note that Wisconsin law provides for extensive post-deprivation remedies, *see* Wis. Stat. § 227.57 (state courts may set aside a state agency's decision when that decision "has been impaired by a material error in procedure or a failure to follow prescribed procedure" or is "not supported by substantial evidence in the record," or when the agency has "erroneously interpreted a provision of law" or abused its discretion). Burton is availing herself of those remedies in Grant County Circuit Court. *See Sabina Leigh Burton v. Bd. of Regents of the*

*Univ. of Wis. Sys.*, No. 18-cv-218 (Grant Cty. Cir. Ct. filed July 6, 2018).[5] Burton does not challenge the adequacy of these post-deprivation procedures.

Burton contends that she was nonetheless deprived of a *meaningful* opportunity to be heard because one of the three hearings was held in her absence, so she had no opportunity to cross-examine the adverse witnesses. Witnesses were neither sworn nor sequestered, and witnesses and members of the appeals panel were heavily influenced by an investigative report that Burton contends was biased. But "when there is an opportunity for a full post-termination hearing, due process does not require an employer to provide full 'trial-type rights,' such as the right to present or cross-examine witnesses at the pre-termination hearing." *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 691 (7th Cir. 2004). That Burton found many aspects of the pre-deprivation procedures to be deficient or unfair is not enough to state a due process claim. Her allegations show that she received at least minimally adequate due process, so she has pleaded herself out of court. *See Michaelowicz v. Vill. of Bedford Park*, 528 F.3d 530, 536–38 (7th Cir. 2008) (affirming dismissal of procedural due process claims on Rule 12(b)(6) motion over plaintiff's objections that he was not given an adequate opportunity to develop and present his version of events at his pre-termination hearing). The court will dismiss Burton's procedural due process claims.

---

[5] The court may "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

ORDER

IT IS ORDERED that:

1. Defendants' motion to dismiss, Dkt. 56, is GRANTED as to the following claims:

   a. Title VII retaliation claims based on the allegation that defendants withheld an investigation report from Burton and the allegations about Patrick Solar

   b. Hostile-work-environment claims under Title VII, the Rehabilitation Act, and the Equal Protection Clause

   c. Fourteenth Amendment procedural due process claims

   The motion is DENIED as to the remaining claims, meaning that Burton may proceed on:

   a. Retaliation claims under Title VII based on four instances of protected activity (filing *Burton I*; reporting offensive hand gesture; complaining to Crowley and Strobl in April 2016; complaining to Gormley in November/December 2016) and six adverse actions (the June 2016 letter of direction; discriminatory maintenance of personnel file; less prestigious teaching schedule; initiating tenure revocation proceedings; suspension from UW-Milwaukee; and termination)

   b. Retaliation claims under the Rehabilitation Act based on four instances of protected activity (complaining to Crowley and Strobl in April 2016; complaining to Gormley in November/December 2016; requesting ulcer-related accommodations in September 2016; requesting ulcer-related accommodations in May 2017) and six adverse actions (the June 2016 letter of direction; discriminatory maintenance of personnel file; less prestigious teaching schedule; initiating tenure revocation proceedings; suspension from UW-Milwaukee; and termination)

   c. Discrimination claims under Title VII and the Rehabilitation Act as to the Board of Regents, and under the Equal Protection Clause as to Crowley, Shields, and Strobl

   d. Failure-to-accommodate claims under the Rehabilitation Act

   e. First Amendment retaliation claims against Gormley, Throop, Shields, and the 17 members of the Board of Regents

22

2. Defendant Deborah Rice is DISMISSED from the case.

3. The clerk of court is directed to set this case for a telephonic scheduling conference before the magistrate judge for the purposes of setting a new trial schedule.

Entered March 29, 2019.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge